ROGER & GALLET *v.* UNITED STATES (No. 2335).[1]

MARKET VALUE—FOREIGN INTERNAL REVENUE.

A tax levied by the French Government upon the alcohol content of perfumes, which forms a part of the price paid for the perfumes by the consumer in France, but which is not levied upon perfumes exported, was correctly added to the invoice price to make dutiable value under paragraph R, Section III, tariff act of 1913.

[1] T. D. 40181.

United States Court of Customs Appeals, May 5, 1924.

APPEAL from Board of United States General Appraisers, G. A. 8708 (T. D. 39901)

[Affirmed.]

B. A. Levett for appellants.
William W. Hoppin, Assistant Attorney General (Charles D. Lawrence and Oscar Igstaedter, special attorneys, of counsel), for the United States.

[Oral argument April 9, 1924, by Mr. Levett and Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BLAND, Judge, delivered the opinion of the court:

The Board of General Appraisers overruled a protest against assessment of duty by the collector of customs at New York, which protest attacked the validity of the reappraisement proceedings and method of finding value thereunder. The collector, the single general appraiser, and the Board of General Appraisers included as a part of the market value of certain perfumes imported a tax assessed by the French Government upon the alcohol used in the manufacture of the perfume. The French law is not before us, but from the testimony in the case it appears that an internal-revenue tax of 10 francs per liter is levied upon the alcohol contained in perfumery sold and consumed in France, and that it is not paid if the merchandise is exported. The French Government controls the manufacture of the alcohol, and the tax becomes due when the alcohol is purchased by the manufacturer of perfumery. Large manufacturers do not always pay direct to the Government at the time of manufacturing the perfumery, but in many instances the .tax-paying purchaser gives bond to the Government for the payment of the tax, and adjustment is made at the end of the year. The manufacturer is permitted by the French Government to carry in bond a stock of alcohol, and is charged with the tax when it goes into consumption in France. The importers herein purchased perfumery direct from the manufacturers. It would appear that where a sale is made by a manufacturer direct for exportation no tax is paid by anyone, and the tax is therefore not a part of the purchase price. In this instance the manufacturer gets credit on the tax he owes the Government. If he sells to a home purchaser who does not have a bond with the Government he first pays the tax and the tax is included in the selling price if for home consumption.

The merchandise in question was imported under the tariff act of October 3, 1913, and an ad valorem duty was assessed upon the basis of the value found by the board to be the home market value. It seems that one of the contentions of the importers before the board was that a certain amount of the proceeds of the French tax was allotted to and expended by the community in which the goods

were consumed, and that it was therefore a local tax and should not have been included under the ruling in United States *v.* Godillot (139 Fed. 1; T. D. 26272). The board found against the importers in this contention, and clearly distinguished the taxes in question from the kind of taxes under consideration in the case of Godillot, supra. The board was clearly right on this point, and the question was not pressed by the importers before this court. The Board of General Appraisers held that the ruling in the case of Passavant *v.* United States (18 Sup. Ct. Rep. 219; 169 U. S. 16) is controlling, and that the French internal-revenue tax was properly included in dutiable value. The importers attempt to distinguish the case at issue from the Passavant case, supra, by calling attention to the fact that the act of 1890 was being construed by the court in that case, and that *dutiable value* was there defined as:

The actual value or wholesale price of such merchandise as bought and sold in usual wholesale quantities at the time of exportation to the United States in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale, including the value of all cartons, etc.—

while in the act of 1913, market value is defined as follows:

That such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets in the usual wholesale quantities, and the price which the seller, shipper or owner *would have received and was willing to receive for such merchandise* when sold in the ordinary course of trade in the usual wholesale quantities including the value of all cartons, * * * and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

They point out that the words in the latter act, "would have received and was willing to receive for such merchandise," must compel the construction that the market value as there defined clearly does not include the tax. We can not arrive at the conclusion desired by the importers without ignoring the ruling in the Passavant case. In our opinion, the very able counsel of the importers, in attempting to argue *around* the Passavant case only succeeds in emphasizing the fact that the issues now before the court are clearly settled by it, and it would seem to us that the importers' position squarely challenges the correctness of the Passavant case which has been the controlling case in this line of decisions for more than a quarter of a century. Adroit and clever arguments, quite appealing in their force, may be made to the effect that the court arrived at the wrong conclusion in the Passavant case, but we regard it as well settled law, and in view of the long and consistent administrative and judicial acquiescence in its terms, we are not disposed to question its correctness.

The tax accrued to the French Government when the alcohol went into the manufactured article and became a part of the value of the article in the home market.

The Board of General Appraisers in the Rheinstrom case (T. D. 20761; G. A. 4368) had under consideration almost the identical question at hand. There, following the Passavant case, the board held that the general internal-revenue tax assessed by the Government of France upon all alcohol consumed in France was properly a part of the market value of white cherries imported from Bordeaux, France, which were preserved in spirits containing 10 per cent of alcohol. There the court said:

We think the action of the appraiser was correct in adding the amount of general internal-revenue tax on alcohol, represented by the item of 156.25 francs per hectoliter. This was a general revenue tax prevailing throughout France and levied upon all alcohol sold for consumption in any of the markets of that country, and is shown to have been remitted on all alcohol exported from that country, whether contained in fruits or otherwise. It was certainly analogous to the so-called German duty, or bonification tax, passed on by the Supreme Court in Passavant's case (18 Sup. Ct. Rep. 219) and board decision in re Passavant (G. A. 4074). The appraiser proceeded upon no wrong principle in adding the amount of this tax as a part of the dutiable value of the merchandise in the markets of France.

Sternfeld v. United States (12 Ct. Cust. Appls. 172; T. D. 40065) and J. D. Nordlinger (T.D. 18950; G. A. 4075) were cases involving the question as to whether an export tax levied by the country from which the goods were exported to the United States was properly included in appraisement proceedings as an item of value upon which to levy duty. It was there held on the authority of the Passavant case, that they should not be included, and these cases we think may be properly cited in support of the conclusions arrived at by the court in this case.

The judgment of the Board of General Appraisers is *affirmed*.